THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| V. | ) | CRIMINAL NO. 11-10206-DPW |
| | ) | |
| OWENS BROWN, et al. | ) | |

**GOVERNMENT'S RESPONSE TO MOTION FOR DISCLOSURE OF 10-DAY REPORTS AND EARLY DISCLOSURE OF WITNESS STATEMENTS**

Now comes the United States of America, by Carmen M. Ortiz, United States Attorney, and Emily Cummings, Assistant United States Attorney for the District of Massachusetts, and submits the Government's Response to Defendant Owens Brown's ("Defendant") Motion For Disclosure of 10-Day Reports and Early Disclosure of Witness Statements.

**I**

**INTRODUCTION**

Defendant's Motion requests that this Court order the production of two separate types of materials. First, Defendant requests the production of 10-day reports submitted by the government to the Court during the course of the Title-III investigation. This request is not grounded in any legal authority, and is in direct contravention of the Federal Rules of Criminal Procedure Rule 16(a)(2) regarding the production of reports prepared by an attorney for the government "in connection with investigating or prosecuting the case." Second, Defendant seeks early disclosure of witness statements. This request seeks to modify Local Rule 116.2(b)(2),

1

which sets the early production of *Jencks*[1] materials at 21 days prior to trial.  Therefore, as set forth below, Defendant's Motion should be denied in its entirety.

II

**ARGUMENT**

A.  **The 10-Day Reports**

Defendant argues that the government must provide copies of the 10-day reports for the following reasons: (1) they are material and exculpatory; (2) they are not protected work-product; and (3) are generally necessary to protect Defendant's right to effective assistance of counsel.  See Def. Mot. at. 1-9.  In support of his argument Defendant asserts, without factual support, that the 10-day reports contain inconsistent statements made by government agents, and information demonstrating that minimization procedures were not followed.  In addition, Defendant argues the 10–day reports are discoverable under *Brady*.  These arguments fail for the reasons set forth below.

Title 18 U.S.C. § 2518(6) provides that the government may be required to file with the judge supervising electronic surveillance summaries of information gleaned from wire interceptions to aid in determining whether the goals of the investigation are being furthered by the wire interceptions, and whether there is a "need for continued interception."  United States v. McCafferty, 772 F.Supp.2d 863, 878 (N.D. Ohio 2011) (holding that progress reports are summaries for the supervising judge's review, to ensure the wire interception is necessary, and are not discoverable).  By letter dated July 8, 2011, the government provided counsel with the affidavits, applications, orders, recordings and line sheets for each of the wiretap orders in the

---

[1]   18 U.S.C. § 3500.

underlying investigation. The government is not under a further obligation to provide "a summary of information already provided." Id. (citing United States v. Orozco, 108 F.R.D. 313 (S.D.Cal. 1985)). Where the defendant has already received the recordings, summaries and logs of intercepted communications the government is not obligated to turn over the progress reports based off of these materials. United States v. Wright, 121 F. Supp. 2d 1344, 1350 (D. Kan. 2000), quoting United States v. Orozco, 108 F.R.D. 313 (S.D. Cal. 1985).

In Wright defendants sought to compel disclosure of the progress reports associated with a wire tap in order to uncover information "regarding the malfunction of the equipment, whether minimization procedures were followed and how they were followed as well as serving as the basis for extensions of the wiretaps." Id. at 1349. The defendant also argued that without the progress reports she did not have a full record of the information the government provided to the court in its wiretap applications. Id. The court denied the defense's request, noting that because the defendant already had the applications they already had access to "the best source of information provided by the government to the issuing court." Id. Similarly, in United States v. Meraz the court held that, where a defendant already had access to the wiretap order and tapes of the monitored conversations, the defendant could not compel discovery of progress reports in order to discover potential defects in the initial applications for the Title III orders, or in the orders' execution. Not Reported in F.Supp.2d, 2007 WL 2257605, 2 (E.D.Wis., 2011).

The affidavits turned over on July 8, 2011, outline the procedure by which monitors minimized calls. In addition, as stated above, the Defendant was provided with all the calls and line sheets. A review of both the calls, line sheets, and the affidavits will give the Defendant, and his counsel, the opportunity to determine whether the minimization procedure was followed,

whether the affidavits filed in support of the wiretap application contain any inaccurate information, and on what grounds they can seek suppression of the wiretaps.

In United States v. Willis, the defendant argued that the progress reports may potentially have depicted him acting in a principle role in an underlying narcotics offense, which the defendant argued was inaccurate. 578 F.Supp. 361 (N.D. Ohio 1984). The defendant persuaded the District Court to require the government to submit the progress reports for an *in camera* review to determine if the "defendant ought to have access to them." Id. at 365. It is unclear whether such reports were ordered disclosed. Id. In United States v. Chimera, the District Court refused to review progress reports *in camera* because the Court would then be required to review all of the "voluminous transcripts of intercepted communications and logs in a search for possible significant inconsistencies." 201 F.R.D. 72, 78 (W.D.N.Y. 2001) (denying the defendant's request for an *in camera* inspection, and holding that the progress reports are not discoverable).

In U.S. v. Pray, 734 F.Supp.2d 158 (D.D.C. 2010) the defendant sought progress reports in an effort to "challenge the necessity of the wiretaps and their various extensions and whether the prosecutors/agents used proper procedures. They also intend to challenge probable cause for the wiretaps, the 'presence of misleading or redundant statements, minimization, the use of other investigative techniques, and any investigate [sic] gaps in the wiretaps.'" 734 F.Supp 2.d at 158. The court listed several reasons for denying the request including that the wiretap statute does not require the government to turn over the reports, that the reports are merely summaries of evidence, not evidence themselves, and that the reports are unrelated to probable cause for the warrants. Id. at 159-160. Finally the court held that the progress reports were "internal

government documents exempt from discovery under Federal Rule of Criminal Procedure 16(a)(2)." Id. at 160.

While the First Circuit has not ruled on whether 10-day reports (progress reports), prepared pursuant to 18 U.S.C. §2518(6), are discoverable, the weight of jurisprudence favors the non-disclosure of progress reports. See, e.g. United States v. Carter, 2011 WL 2560239, 1 (W.D.La., 2011); United States v. Meraz, 2007 WL 2257605, 2-3. Additionally, the reports are protected under Rule 16(a)(2) of the Fed.R.Crim.P. as reports prepared by a government agent in connection with investigating a case. Likewise, in U.S. v. Chimera, 201 F.R.D. 72 (W.D.N.Y. 2001), the defense sought the progress reports in an attempt to uncover violations of 18 U.S.C. 2518(1),(4)(e), and (5). The court denied the request holding, among other reasons for the denial that because"the reports are prepared by prosecutors or agents assigned to the investigation, they also fall within the law enforcement exception to discovery as provided in Fed.R.Crim.P. 16(a)(2)." 201 F.R.D. at 78.

Defendant cites In re United Mine Workers of America Employee Benefit Plans Litig., 159 F.R.D. 307, 312 (D.D.C. 1994) for the proposition that "once the ten-day reports were voluntarily and intentionally filed with the Courts...any conceivable privilege was waived." Def,'s Mot. 8. United Mine Workers dealt with questions of whether or not the defendants could compel the production of documents, under a "subject matter waiver" theory, which the plaintiffs claimed were protected as work product where the plaintiffs had already disclosed privileged documents related to the same subject matter. 159 F.R.D. at 309-310. The case talks only about work-product rules generally, and does not specifically address Rule 16(a)(2). Even if the holding of United Mine Workers is applicable to Rule 16(a)(2), the holding of the case seems to

be the opposite of the holding attributed to it by the defendants.  The court held that it was not appropriate to extend a subject matter waiver to documents protected as work product, saying that to do so would be "inconsistent with the proposes of the attorney work product privilege." Id. at 312.

    Defendant next cites to United States v. Textron, Inc., 577 F.3d 21 (1st Cir. 2009), to argue that the reports should be discoverable since they "were not prepared 'for' this criminal trial; instead the ten-day reports were prepared in connection with the government's requests for wiretaps before Mr. Brown was ever charged."  Def.'s Mot. 8.  The defendant points to language from Textron that suggests that "it is not enough to trigger work product protection that the subject matter of a document relates to a subject that might conceivable be litigated."  The court in Textron, however ultimately rejected the notion that the documents at issue (tax accrual work papers) were not protected as work product because "the only purpose of Textron's papers was to prepare financial statements." The Court noted that the papers would have been created in essentially the same form even if there was no litigation. 577 F.3d at 30.  The court distinguished between documents where the subject matter relates to litigation, and documents prepared to further litigation.  ("It is not enough to trigger work product protection that the *subject matter* of a document relates to a subject that might conceivably be litigated. Rather, as the Supreme Court explained, the literal language of [Rule 26(b)(3) ] protects materials *prepared for* any litigation or trial as long as they were prepared by or for a party to the subsequent litigation). Id. at 29 (emphasis original, internal quotation marks removed).

    Finally, Defendant cites to Hickman v. Taylor, 329 U.S. 495, 511 (1947), to argue that "Where relevant and non-privileged facts remain hidden in an attorney's file and where

production of those facts is essential to the preparation of one's case, discovery may be properly

had." Hickman dealt with a situation in which the defense attorney refused to turn over

statements he had gathered from survivors of a ship wreck, requested in an interrogatory, to the

attorney of a plaintiff suing in relation to the wreck. Id. at 498-499. Here, by contrast, there are

no facts "hidden in an attorney's file." As described *supra*, all the relevant facts from the

progress reports were turned over to the defense attorney in the form of the affidavits,

applications, orders, and line sheets for each of the wiretap orders in the underlying investigation.

The progress reports are simply a summary of information already provided to the defendant. The

government is not under a further obligation to provide "a summary of information already

provided." 772 F. Supp. 2d. at 878 .

In this case, the 10-day reports were drafted by an Assistant United States Attorney

during an ongoing investigation, and are protected under Fed.R.Crim.P. 16(a)(2), because they

are "reports, memoranda or other internal government documents made by an attorney for the

government or other government agents in connection with" an investigation.  Although

Defendant points to the fact that the 10-day reports were filed with the court in support of his

argument that they are not merely protected work product.  This argument is unpersuasive.  In

this case the 10-day reports were filed under seal with the reviewing District Judge, not in

support of a wire application, but as a report on the progress of the investigation, and should not

be disclosed.

Defendant makes several arguments that, even if the 10-day reports are not discoverable

pursuant to the Local Rules or statute, the are discoverable under *Brady*.  This argument is

without merit.  "The United States Supreme Court's holding in *Brady* requires the government to

disclose any exculpatory evidence which is 'material either to guilt or to punishment.'" United States v. Caro-Muniz, 406 F.3d 22, 29 (1st Cir. 2005). *Brady* requires not only the disclosure of exculpatory information, but also the disclosure of information which could be used to impeach government witnesses. See United States v. Bagley, 473 U.S. 667, 676 (1985) ("Impeachment evidence . . . as well as exculpatory evidence, falls within the *Brady* rule."). However, courts have consistently noted that "*Brady* is not a discovery rule, but a rule of fairness and minimum prosecutorial obligation." United States v. Beasley, 576 F.2d 626, 630 (5th Cir. 1978); see also United States v. Quinn, 123 F.3d 1415, 1421 (11th Cir. 1997) ("the Supreme Court has made it clear that the *Brady* rule is not an evidentiary rule that grants broad discovery powers to a defendant"); United States v. Lujan, 530 F.Supp.2d 1224, 1231 (D.N.M. 2008) ("The *Brady* rule is not an evidentiary rule that grants broad discovery powers to a defendant because there 'is no general constitutional right to discovery in a criminal case.'") (citation omitted).

> The Supreme Court has stated that:
>
> The *Brady* rule is based on the requirement of due process. Its purpose is not to displace the adversary system as the primary means by which truth is uncovered, but to ensure that a miscarriage of justice does not occur. Thus, the prosecutor is not required to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial.

Bagley, 473 U.S. at 675; see also Weatherford v. Bursey, 429 U.S. 545, 559 (1977) ("There is no general constitutional right to discovery in a criminal case, and *Brady* did not create one."). The Bagley Court went on to note that "[a]n interpretation of *Brady* to create a broad, constitutionally required right of discovery 'would entirely alter the character and balance of our present systems of criminal justice.'" Id. at 675 n.7. Thus, "it is the prosecution 'that decides which information

must be disclosed. Unless, defense counsel becomes aware that other exculpatory evidence was withheld and brings it to the court's attention, the prosecutor's decision on [*Brady*] disclosure is final.'" United States v. DeCologero, 530 F.3d 36, 75 (1st Cir. 2008) (quoting Pennsylvania v. Ritchie, 480 U.S. 39, 59 (1987)). Along these lines, "'[a] defendant's right to discover exculpatory evidence does not include the unsupervised authority to search through the [government's] files.'" Caro-Muniz, 406 F.3d at 29 (quoting Ritchie, 480 U.S. at 59).

In Orozco the court dismissed a defendant's argument that progress reports should be turned over under Brady v. Maryland, 373 U.S. 83 (1963), the Jencks Act, 18 U.S.C. § 3500, and Fed.R.Crim.P. 16, since they may contain exculpatory information. 108 F.R.D. at 315. The court noted that any such information would also have been contained in its original form in documents the government was already obligated to turn over. Id. at 316. In this case, the government is aware of its on-going discovery obligations under both *Brady* and Local Rule 116.2 and will continue to comply with both.

**B.      Witness Statements**

Defendant asserts similar arguments pursuant to *Brady* in support for his request for early disclosure of witness statements. For the reasons set forth above, those arguments fail. In addition, Defendant seeks early disclosure of witness statements in anticipation that he will find impeachment material in them. These arguments are premature at this stage as no trial date has been set and the government has yet to determine what witnesses will be called as part of its case-in-chief.

While impeachment evidence, like exculpatory evidence, must be disclosed to the defense under *Brady*, impeachment evidence is not exculpatory evidence. "*Brady* material consists

9

primarily of two types of evidence: (1) *exculpatory evidence*, which goes to the heart of the defendant's guilt or innocence . . . ; and (2) impeachment evidence, which may affect the jury's assessment of the credibility of a prosecution witness . . . ." United States v. Beckford, 962 F.Supp. 780, 787-88 (E.D.Va. 1997); see also Lujan, 530 F.Supp.2d at 1255. Courts have repeatedly found that these two types of evidence should be treated differently with respect to the timing of disclosure by the government. The court in Beckford stated that the "determination of the precise time at which *Brady* material must be disclosed is necessarily governed by the specific nature of the *Brady* material at issue – *i.e*, whether it is exculpatory or merely impeachment evidence." Beckford, 962 F.Supp. at 788; see also Lujan, 530 F.Supp.2d at 1255 ("The precise time at which *Brady* or *Giglio* evidence must be disclosed will . . . depend on the specific nature of the evidence at issue."); United States v. Welton, 2009 WL 2390848 at *7 (C.D.Cal. Aug. 1, 2009) ("The timing of required *Brady* and *Giglio* disclosures differs."). As to the difference in the timing of the disclosures, the court in Lujan noted:

> Exculpatory evidence will usually require significant pretrial investigation to be useful to a defendant at trial, and thus, disclosure should generally be required well before pure *Giglio* impeachment evidence, which usually does not require substantial time to prepare for its effective use at trial.

Lujan, 530 F.Supp.2d at 1255; see also Beckford, 962 F.Supp. at 789 ("the Government is ordinarily required to produce exculpatory evidence well before its disclosure of pure *Giglio* material"); Welton, 2009 WL 2390848 at *7 (disclosures for exculpatory *Brady* information need "'be made at a time when disclosure would be of value to the accused'" while, in contrast, "because *Giglio* material 'merely goes to the credibility of the witness, it need not be disclosed prior to the witness testifying'") (citations omitted); United States v. Goggins, 2009 WL 275557

at *2 (W.D.Pa. Feb. 4, 2009) ("As to the timing of the required disclosures, it is well settled that the government's obligations under *Brady* require it to disclose actual exculpatory evidence without undue delay.  In contrast, *Brady* impeachment material ordinarily must be disclosed 'in time for its effective use at trial.'") (citation omitted); United States v. Frank, 11 F.Supp.2d 322, 325 (S.D.N.Y. 1998) (holding same).

In United States v. Griffith, 2000 WL 1253265 at * 13 (S.D.N.Y. Sept. 5, 2000) (citation omitted), the district court stated:

> The defendants characterize this material as *Brady* material, dismissing the Government's distinction between *Brady* material and *Giglio* material as "mental gymnastics."  In a very broad sense, the two types of evidence are similar: "*Giglio* material falls under the umbrella of the *Brady* rule because impeachment material directly affects the credibility of a witness and the 'reliability of a given witness may well be determinative of guilt or innocence.'" . . . The finer distinctions between the two are important, because those distinctions determine at which point the evidence must be disclosed.  "[W]hile the requirements of due process underlie both the *Brady* doctrine and its off-spring, including *Giglio*, the very nature of *Giglio* material dictates a different timetable for its effective use."

In this case, as was the case in United States v. Hopkins:

> A misconception that runs throughout the defense argument . . . is that there is no conceptual or procedural difference between *Brady* (exculpatory) and *Giglio* (impeaching) information.  The former relates to evidence that directly tends to lessen a defendant's guilt, e.g., a statement from another person which tends to relieve the defendant of responsibility for the crime, and the latter to *witness credibility* type evidence of a *collateral nature*, e.g., evidence that the government's witness who is implicating the defendant is not to be trusted in his implications because of bias, previous misrepresentations in similar matters, and so forth, i.e., indirectly making it less likely that the defendant is guilty.

United States v. Hopkins, 2008 WL 4453583 at *2 (E.D. Cal. Oct. 3, 2008) (emphasis in original).  The court in Hopkins further noted:

> While each type of "favorable" evidence stands on equal Constitutional footing, and is not distinguished in that regard . . . there is an important procedural and

11

>conceptual difference which attaches to the two types of "favorable-to-the-defendant" evidence. *Brady* evidence is to be disclosed to the defendant at a time such that the defendant is able to put the evidence to meaningful use, i.e., perform the necessary investigation and follow-up. . . .  However, *Giglio* evidence need not be disclosed until a witness testifies: "[s]ince information concerning favors or deals merely goes to the credibility of the witness, it need not be disclosed prior to the witness' testifying." . . . <u>This case illustrates the common sense perception that a witness' bias or reputation for prevaricating, for example, is only important if the witness actually testifies</u>."

<u>Id</u>. (citation omitted) (emphasis added).

The analysis of the difference in the timing of disclosures for exculpatory and impeachment information outlined in the cases above mirrors the Local Rules of this District as they relate to the timing of disclosures involving exculpatory information (set forth in Local Rule 116.2(B)(1)) and the timing of the disclosure of impeachment information (set forth in Local Rule 116.2(B)(2)).  Defendant's argument is contrary to both.  The government is not required to provide impeachment evidence any earlier than the time period set forth in Local Rule 116.2(B)(2), i.e., 21 days before trial.  Therefore, Defendant's motion for the early disclosure of witness statements to compel the immediate disclosure of impeachment evidence should be denied.

## III

## <u>CONCLUSION</u>

Defendant's Motion should be denied for the reasons stated herein in its entirety.

                                                  Respectfully submitted,

                                                  CARMEN M. ORTIZ
                                                  United States Attorney

By:    /s/ *Emily Cummings*
          Emily Cummings
          Assistant United States Attorney

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on April 24, 2012.

    /s/ Emily Cummings
    EMILY CUMMINGS
    Assistant United States Attorney

Date: April 24, 2012